UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PUGET SOUND SURGICAL CENTER, P.S., | CASE NO. C17-1190JLR |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION |
| v. | |
| AETNA LIFE INSURANCE COMPANY, et al., | |
| Defendants. | |

## I.  INTRODUCTION

Before the court is Defendant Anchorage School District Active Employee Open Choice PPO Medical Plan's ("ASD Plan") motion to dismiss based on lack of personal jurisdiction and failure to state a claim.  (Mot. (Dkt. # 27).)  Plaintiff Puget Sound Surgical Center, P.S. ("PSSC") opposes the motion.  (*See* Resp. (Dkt. # 45); *see also* Sur-reply (Dkt. # 55).)  The court has reviewed the motion, all submissions filed in support of and opposition to the motion, the relevant portions of the record, and the

applicable law. Being fully advised,[1] the court GRANTS the motion because the court lacks personal jurisdiction over ASD Plan. Because personal jurisdiction over ASD Plan is lacking, the court does not reach the merits of PSSC's motion to dismiss for failure to state a claim.

## II. BACKGROUND

On August 8, 2017, PSSC filed a complaint against Defendants Aetna Life Insurance Company and Aetna, Inc. (collectively, "Aetna") and other Defendants, including ASD Plan (collectively, "Plan Defendants"). (*See* Compl. (Dkt # 1).) ASD Plan is a self-funded health insurance plan providing health coverage to employees of the Anchorage School District,[2] along with their dependents. (Hess Decl. (Dkt. # 28) ¶ 3; Haldane Decl. (Dkt. # 48) ¶ 2; Compl. ¶ 14.) ASD Plan executed an Administrative Services Agreement ("ASA") with Aetna under which Aetna assumed duties as the third-party administrator for ASD Plan. (Haldane Decl. ¶ 3.) Under the ASA, Aetna is responsible for all claims processing, approval, payment, and denial of claims, along with issuance of Explanation of Benefits ("EOB") forms, and processing and resolving appeals. (*Id.*) The ASA provides for complete internal review procedures. (*Id.* ¶ 4.) Aetna handles all internal or external appeals with no participation from ASD Plan. (*Id.*)

---

[1] No party requested oral argument or a hearing on ASD Plan's motion for lack of personal jurisdiction, and the court concludes that oral argument would not assist its disposition of this motion. *See* Local Rules W.D. Wash. LCR 7(b)(4).

[2] The Anchorage School District is headquartered in Anchorage, Alaska, and manages all public schools there. (Hess Decl. ¶ 2.)

Generally, ASD Plan's involvement in health insurance claims is limited to confirming whether an individual is eligible for health coverage. (*Id.* ¶ 6.)

PSSC alleges that Aetna improperly denied coverage for certain medical services PSSC provided to patients who were insured by Plan Defendants. (*Id.* ¶¶ 4, 23-65.) Specifically with regard to ASD Plan, PSSC alleges that, on April 7, 2017, PSSC billed one hundred and fifty dollars ($150.00) for services rendered to a patient insured by ASD Plan and Aetna did not pay for those services. (*Id.* ¶ 69.) This is the only fact specifically related to ASD Plan that PSSC alleges. (*See id.*) On the basis of the foregoing alleged facts, PSSC asserts a claim for unjust enrichment against ASD Plan. (*Id.* ¶¶ 112-24.)

ASD Plan does not conduct any operations in Washington State. (Hess Decl. ¶ 4.) ASD Plan does not pay taxes in Washington State and is not licensed to do business there. (*Id.* ¶¶ 6, 10.) ASD Plan does not have any employees, offices, real estate, bank accounts, or other property in Washington State. (*Id.* ¶ 7.)

ASD Plan also submits testimony that it "does not solicit business in the State of Washington." (*Id.* ¶ 9.) PSSC, however, counters with evidence that the Anchorage School District (1) solicited a number of companies, including a Seattle, Washington based company known as Vera Whole Health ("Vera"), to submit a bid for a multiyear, $11,333,500.00 contract to operate a healthcare clinic in Anchorage, Alaska for Anchorage School District employees and their dependents, and (2) ultimately, awarded the contract to Vera. (*See* Axelrod Decl. (Dkt # 46) ¶ 2, Ex. 1.) ASD Plan does not deny these facts, but notes that this contract is between the Anchorage School District and

Vera and did not involve ASD Plan.  (*See* Reply (Dkt. # 47) at 10; *see also* Whiting Decl. (Dkt. # 49) ¶ 2.)

ASD Plan does not ordinarily receive copies of the Explanation of Benefits EOB forms that Aetna sends to individuals filing claims.  (Haldane Decl. ¶ 7.)  Nevertheless, ASD Plan investigated the allegations in PSSC's complaint and, in the course of that investigation, asked Aetna to provide information regarding the $150.00 claim related to an insured under ASD Plan that PSSC alleges Aetna did not pay.  (*Id.*; *see also* Compl. ¶ 69.)  In response, ASD Plan received an EOB form from Aetna showing that the claim was paid.  (Haldane Decl. ¶ 7, Ex. 1.)  PSSC filed an agreed sur-reply, along with documentary evidence, of additional claims that Aetna did not pay related to ASD Plan.[3] (*See generally* Sur-reply; *see* Sherman Decl. (Dkt. # 56) ¶¶ 1-7, Exs. 1-6; *see also* Reply at 5 n.3 (stating that ASD Plan does not object to PSSC filing a sur-reply).

## III.    ANALYSIS

ASD Plan moves to dismiss PSSC's claim against it on two grounds.  First, ASD Plan argues that PSSC's complaint against it should be dismissed because the complaint fails to state a claim under Federal Rule of Civil Procedure 12(b)(6).  (Mot. at 4-8.) Second, ASD Plan asserts that PSSC's claim against it must be dismissed because the

---

[3] Whether ASD Plan received EOB forms from Aetna relates to the issue of personal jurisdiction.  Indeed, PSSC argues ASD Plan's receipt of EOB forms from Aetna related to claims in Washington supports the existence of personal jurisdiction.  (*See* Resp. at 5.) However, whether Aetna failed to pay the claims of ASD Plan insureds relates to ASD Plan's motion to dismiss for failure to state a claim.  (*See* Reply at 5.)  Because the court does not reach the latter issue, it does not consider whether to convert ASD Plan's motion to dismiss based on failure to state a claim to a motion for summary judgment based on the documentary evidence submitted by both parties.  Further, whether there are unpaid claims in addition to the $150.00 claim alleged in the complaint or not does not alter the court's analysis of personal jurisdiction.

court lacks personal jurisdiction over ASD Plan pursuant to Federal Rule of Civil Procedure 12(b)(2). (*Id.* at 9-15.) Personal jurisdiction is a threshold issue, and so the court must address the jurisdictional challenge before considering the merits of the case. *See, e.g.*, *Brayton Purcell LLP v. Recordon & Recordon*, 575 F.3d 981, 991 (9th Cir. 2009) (explaining that "personal jurisdiction is a threshold issue in every lawsuit and the erroneous exercise of personal jurisdiction deprives all subsequent proceedings of legal effect."). As discussed herein, because the court concludes that it lacks personal jurisdiction over ASD Plan, it dismisses PSSC's claim against ASD Plan without prejudice and does not reach the issue of the adequacy of PSSC's pleading.

**A.      Standards for Considering a Rule 12(b)(2) Motion to Dismiss**

A motion to dismiss for lack of personal jurisdiction is governed by Rule 12(b)(2). *See* Fed. R. Civ. P. 12(b)(2). "In opposition to a . . . motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008) (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). In evaluating ASD Plan's motion, "[t]he court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (citing *Data Disc, Inc. v. Sys. Tech. Assoc, Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977)). If the court decides the motion based on the pleadings and affidavits submitted by the parties without conducting an evidentiary hearing, "the plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Id.* (quoting *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). Although

a plaintiff cannot simply rest on the bare allegations of her complaint, the court must accept uncontroverted allegations in the complaint as true, and conflicts between parties over statements in affidavits must be resolved in the plaintiff's favor. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *see Boschetto*, 539 F.3d at 1015.

To establish personal jurisdiction, a plaintiff must show that the forum state's jurisdictional statute confers jurisdiction and that the exercise of jurisdiction accords with federal constitutional principles of due process. *Amoco Egypt Oil Co. v. Leonis Navigation Co., Inc.*, 1 F.3d 848, 850 (9th Cir. 1993). In Washington, general personal jurisdiction is authorized by RCW 4.28.080(10), which provides for service on a foreign corporation "doing business" in Washington, while RCW 4.28.185, Washington's long arm statute, creates specific jurisdiction. *Id.* Washington courts interpret RCW 4.28.080(10) "as conferring general jurisdiction over nonresident defendants who conduct 'substantial' and 'continuous' business in the state 'of such character as to give rise to a legal obligation,'" and consistently hold that the "doing business" and due process inquiries are the same. *Id.* at 850-51 (quoting *Crose v. Volkswagenwerk Aktiengesellschaft*, 558 P.2d 764, 766-67 (Wash. 1977)). Washington courts also hold that RCW 4.28.185 "extends jurisdiction over a defendant to the fullest extent" due process permits. *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 672 (9th Cir. 2012) (citing RCW 4.28.185; *Shute v. Carnival Cruise Lines*, 783 P.2d 78, 82 (Wash. 1989)). Thus, the court's jurisdictional analysis collapses into a determination of whether the exercise of personal jurisdiction comports with due process. *Id.*; *see also*

*Stairmaster Sports/Med. Prod., Inc. v. Pac. Fitness Corp*., 916 F. Supp. 1049, 1052

(W.D. Wash. 1994), *aff'd*, 78 F.3d 602 (Fed. Cir. 1996) (citing *Amoco*, 1 F.3d at 850-51

("Washington's two statutes [RCW 4.28.080(10) and RCW 4.28.185] are coextensive

with the bounds of due process."); *Raymond v. Robinson*, 15 P.3d 697, 705 (Wash. Ct.

App. 2001) ("Washington courts have held repeatedly that the current general jurisdiction

analysis subsumes the due process requirements.").

"Due process requires that the defendant 'have certain minimum contacts' with the

forum state 'such that the maintenance of the suit does not offend traditional notions of

fair play and substantial justice.'" *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015)

(quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (internal quotation marks

omitted)). "The strength of contacts required depends on which of the two categories of

personal jurisdiction a litigant invokes: specific jurisdiction or general jurisdiction."

*Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015).

PSSC generally alleges that "each Defendant systematically and continuously

conducts business in [Washington], and otherwise has minimum contacts with

[Washington] sufficient to establish personal jurisdiction over each of them." (Compl.

¶ 7.) PSSC does not assert any specific allegations related to ASD Plan concerning

personal jurisdiction. (*See generally id.*) As discussed below, PSSC fails to meet its

burden of establishing that the court's exercise of either general or specific personal

jurisdiction over ASD Plan is proper.

//

//

**B.     General Personal Jurisdiction**

The standard for finding general personal jurisdiction over a defendant is "exacting" because it "permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger*, 374 F.3d at 801; *see also Ranza*, 793 F.3d at 1069. General personal jurisdiction requires that the defendant's contacts with the forum state be "'substantial' or 'continuous and systematic.'" *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984)). "The standard for general jurisdiction is high. . . . [A] defendant must not only step through the door, it must also '[sit] down and [make] itself at home.'" *Tuazon v. R.J. Reynolds Tobacco Co*., 433 F.3d 1163, 1169 (9th Cir. 2006) (internal citation omitted) (quoting *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co*., 284 F.3d 1114, 1125 (9th Cir. 2002)).

In evaluating general personal jurisdiction, the Ninth Circuit has "not developed a precise checklist or articulated a definitive litany of factors." *Tuazon*, 433 F.3d at 1172. The court considers, "among other factors, 'whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there.'" *Id.* (quoting *Bancroft & Masters*, 223 F.3d at 1086). "Longevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets are among the indicia of such a presence." *Id.*

PSSC does not argue that ASD Plan is subject to the court's general personal jurisdiction. (*See generally* Resp.) Indeed, PSSC alleges no facts that would support the court's exercise of general personal jurisdiction over ASD Plan, nor are there any facts in the record to support the exercise of general personal jurisdiction. As noted above, ASD Plan does not have an office or any employees located in Washington. (Hess Decl. ¶ 7.) Moreover, ASD Plan does not conduct sales in Washington. (*Id.* ¶ 5.) Finally, ASD Plan did not solicit business in Washington or direct its insureds to obtain services in Washington. (*Id.* ¶¶ 12-14.)

In *King v. American Family Mutual Insurance Co*., the defendant's insured was involved in an accident in Montana. 632 F.3d 570, 572 (9th Cir. 2011). The defendant insurance company was organized in and had its principle place of business in Wisconsin. *Id.* at 573. The insured was a resident of Colorado, and the defendant issued the insurance policy in Colorado. *Id.* at 572-73. The defendant insurer had no offices or employees in Montana, had no sales in Montana, and did not solicit business in Montana. *Id.* at 573. At some point, the defendant insurer had thought about doing business in Montana, and as part of that process had appointed Montana's Commissioner of Insurance for service of process. *Id.* The defendant, however, never actually conducted any business in Montana. *Id.* The Ninth Circuit concluded that the companies' contacts with Montana "hardly approximate physical presence and are not 'continuous and systematic.'" *Id.* at 579. In other words, the defendants "had not set up a 'home' in Montana," and thus, the court could not exercise general personal jurisdiction over them. *Id.* Likewise, ASD Plan, which has no offices or employees in Washington and does not

solicit or conduct sales here, has not stepped through the door and set up a home in Washington.  Accordingly, the court concludes that it cannot exercise general personal jurisdiction over ASD Plan.

**C.     Specific Personal Jurisdiction**

Specific personal jurisdiction exists "where the suit 'arises out of' or is related to the defendant's contacts with the forum and the defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Tuazon*, 433 F.3d at 1169 (quoting *Burger King Corp.*, 471 U.S. at 475).  The Ninth Circuit has a three-pronged test for analyzing specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) The claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) The exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*King*, 632 F.3d at 580-81.  As the plaintiff, PSSC bears the burden of satisfying the first two prongs.  *See Schwarzenegger*, 374 F.3d at 802.  If PSSC fails to carry this burden, then specific personal jurisdiction is lacking.  *See id.*  Only if PSSC satisfies both of the first two prongs does the burden shift to ASD Plan, as the defendant, to "present a compelling case" that the exercise of specific personal jurisdiction would not be reasonable.  *See id.*

PSSC fails to meet its burden with respect to the first two prongs of the specific personal jurisdiction test.  In support of its motion, ASD Plan provides a sworn declaration demonstrating that it does not direct any of its activities toward Washington.  (*See generally* Hess Decl.)  ASD Plan provides testimony that it does not conduct any operations or sales in Washington (*id.* ¶¶ 4-5), does not pay taxes in Washington (*id.* ¶ 5), does not have any employees, offices, real estate, bank accounts, or other property in Washington (*id.* ¶ 7), does not have records in Washington (*id.* ¶ 8), is not licensed to do business in Washington (*id.* ¶ 10), does not solicit business in Washington or from PSSC (*id.* ¶¶ 9, 12), has not negotiated, entered into or been a party to an agreement with PSSC (*id.* ¶ 13), and has not directed ASD Plan insureds to seek or receive medical services from any healthcare provider in Washington, including but not limited to PSSC (*id.* ¶ 14).

Despite this evidence, PSSC makes a number of arguments in support of the court's exercise of specific personal jurisdiction in Washington.  PSSC argues that ASD Plan contracted with Aetna, ASD Plan's third-party claim administrator, in Washington.  (Resp. at 5.)  However, PSSC never alleges this fact in its complaint and provides no evidence to support it either.  (*See generally* Compl.; *see also* Dkt.)  Indeed, PSSC specifically alleges that Aetna is headquartered in Hartford, Connecticut, but may be relocating to New York City.  (Compl. ¶ 10.)  PSSC also argues that "when Aetna profiled [PSSC] it did [so] on behalf of [ASD Plan], and [ASD Plan] retained all the money caused by Aetna's having flagged Puget Sound's claims."  (Resp. at 5.)  PSSC asserts that "[ASD Plan] retained this amount, with [ASD Plan's] knowledge . . . ."  (*Id.*)  Again, there are no specific allegations to this effect in PSSC's complaint (*see generally*

Compl.), and PSSC provides the court with no evidence in support of these alleged facts (*see generally* Dkt.). Finally, PSSC notes that ASD Plan received EOBs from Aetna pertaining to PSSC. (Resp. at 5.) ASD Plan does not deny that it received EOBs from Aetna concerning PSSC, but acknowledges doing so only in connection with its investigation of PSSC's complaint. (*See* Haldane Decl. ¶ 7, Ex. 1.) Even if PSSC properly alleged or supported all of the foregoing facts, however, those facts would be insufficient to support the court's exercise of specific personal jurisdiction in the face of ASD Plan's evidence that it did nothing to purposefully avail itself of the benefits and protections of Washington's laws or direct its activities to this state. (*See generally* Hess Decl.)

*Choice Healthcare, Inc. v. Kaiser Foundation Health Plan of Colorado*, 615 F.3d 364, 369-70 (5th Cir. 2010), is instructive. In *Choice*, the insureds obtained medical services from a medical provider in Louisiana. *Id.* at 367. The defendant insurer issued policies in multiple states, but none in Louisiana. *Id.* at 366. The insurer, however, had paid a limited number of claims to the medical provider in Louisiana. *Id.* at 367. After the insurer denied full payment for a Louisiana medical provider's services, the medical provider brought suit in Louisiana. *Id.* The Fifth Circuit held that the district court in Louisiana did not have specific personal jurisdiction over the defendant insurer. Specifically, the Fifth Circuit stated:

> [The insurer's] payment of a limited number of claims for treatment of [the insurer's] insured, based on the unilateral decision of those insureds who sought treatment in Louisiana, does not establish purposeful contact between the individual [insurer] defendants and the State of Louisiana. . . . [The insurer] made the payments because its insureds independently and

without encouragement from [the insurer] presented to a Louisiana hospital. . . .

*Id.* at 369-70.

Just as the insurer in *Choice* never purposely established contact in Louisiana, neither is there any evidence or even an allegation that ASD Plan purposely established contact in Washington. Instead ASD Plan participants took unilateral actions by seeking care at PSSC in Washington. (*See* Hess Decl. ¶ 14 ("The ASD Plan does not direct ASD Plan insureds to seek or receive medical services from any particular healthcare provider in the State of Washington, be it PSSC or any other entity."). The participants' unilateral actions to avail themselves of medical care in Washington represent an insufficient basis for the court to exercise specific personal jurisdiction over ASD Plan. *See Walter v. Blue Cross & Blue Shield United of Wis.*, 181 F.3d 1198, 1202-05 (11th Cir. 1999) (concluding that the court lacked specific personal jurisdiction in Florida over an out-of-state insurer who issued a policy in Wisconsin where the insured made a unilateral decision to seek medical care in Florida even though the insurer had continued to accept premiums and pay claims once the insured moved to Florida); *see also Berg v. Blue Cross and Blue Shield of Utica–Watertown, Inc.*, No. C-93-2752-DLJ, 1993 WL 467859, at *3-4 (N.D. Cal. Nov. 2, 1993) (concluding that it could not exercise specific personal jurisdiction over defendant insurer despite multiple payments by the insurer into the forum because the insurer had taken no affirmative steps to avail itself of benefits from activities related to that state and was merely responding to actions taken by the insured).

This analysis is also consistent with the Ninth Circuit's decision in *Hunt v. Erie Insurance Group*, 728 F.2d 1244 (9th Cir.1984). In *Hunt*, an East Coast insurer provided automobile insurance payments to the plaintiff, a resident of Pennsylvania involved in a car accident in Colorado, as a third-party beneficiary of the policy. *Id*. at 1245. After initially being treated in Colorado, the plaintiff sought medical treatment from a specialist in California and made a claim for coverage under the policy. *Id.* When the insurer paid out some, but not all, of the plaintiff's claims, the plaintiff filed suit in California. *Id*. at 1246. The insurer moved to dismiss for lack of personal jurisdiction. *Id.* The insurer argued that although it covered residents in a handful of states, it was not registered to do business in California and conducted no business with any California residents. *Id*. Despite these scant contacts, the plaintiff argued that jurisdiction over the insurer was appropriate because the insurer purposefully availed itself of California by mailing payments to California and by committing a tort in California in failing to pay the plaintiff's claims in full. *Id.* The Ninth Circuit rejected this argument, stating:

> The mere fact that [the insurer] communicated with [the plaintiff] in the state, and may have committed a tort in the exchange of correspondence, does not show that [the insurer] purposefully availed itself of the privilege of conducting business in California. [The plaintiff's] move to California forced [the insurer] to send mail to that State concerning her claim.

*Id.* at 1248. Thus, in *Hunt*, simply paying a portion of the insured's claim to a medical provider in California and exchanging correspondence in the state was an insufficient basis for the court to assume specific personal jurisdiction in California.

Here, ASD Plan's connection to Washington is even more tenuous than the insurer's connection to California in *Hunt*. Aetna, ASD Plan's claim administrator, and

not ASD Plan, made the coverage decisions concerning the medical services provided by PSSC. (Haldane Decl. ¶ 3 ("Aetna is responsible for all claims processing, approval, payment, and denial of claims, along with issuance of [EOB] forms, and processing and resolving appeals.").) ASD Plan is not involved in either the initial decision-making process or the appeal process. (*Id.* ¶¶ 3-4.) Therefore, ASD Plan's connection to Washington would be even more attenuated than the insurer's connection to California in *Hunt.* As a result, the court concludes that ASD Plan has not availed itself of the privileges of conducting business in Washington.

Based on the foregoing authorities, the court concludes that PSSC has failed to meet its burden of establishing the first prong of the test for specific personal jurisdiction because ASD Plan did not direct any action within Washington or take any steps to invoke the benefits and protections of Washington's laws. The insureds' independent selection of PSSC as a healthcare provided does not demonstrate that ASD Plan has purposefully availed itself of the privilege of conducting business in Washington. Further, Aetna, and not ASD Plan, made the coverage decisions at issue concerning PSSC's medical services in Washington. Thus, the court concludes that PSSC fails to meet its burden with respect to the first prong in the specific personal jurisdiction test.[4]

---

[4] PSSC's authority is not to the contrary. In *Griffiths & Sprague Stevedoring Co. v. Bayly, Martin & Fay, Inc.*, 430 P.2d 600 (Wash. 1967), the Washington Supreme Court considered whether it has personal jurisdiction over a California broker that had ordered insurance by telephone and mail through another insurance broker located in Seattle, Washington. *Id.* at 604. The Washington Supreme Court held that the defendant California insurance broker had "submitted to the jurisdiction of Washington courts under the long-arm statute as to that particular transaction." *Id.* Here, there is no contract between PSSC and ASD Plan. (*See* Hess Decl. ¶ 13.) Further, ASD Plan did not solicit any business from PSSC or direct its participants to seek care there. (*See id.* ¶¶ 12, 14.) Thus, *Griffiths* is inapposite.

Even if PSSC could meet the first prong of the test, PSSC fails on the second prong—that the claim must be one that arises out of or relates to the defendant's forum-related activities. *See King*, 632 F.3d at 580-81. The complaint does not allege any activities in Washington by ASD Plan that give rise to the PSSC's claim for unjust enrichment. (*See generally* Compl.) Instead, the complaint alleges actions on the part of Aetna, but not ASD Plan. (*See id.* ¶¶ 23-83.) As noted above, the specific allegations against ASD Plan are limited to asserting that "patient MR" . . . "is a member of [ASD Plan], which is a non-ERISA plan," and that Aetna did not pay PSSC for $150.00 in medical services that PSSC provided to MR on April 7, 2017. (*Id.* ¶ 69.)

Because PSSC has failed to meet its burden concerning the first two prongs of the test that the court considers in evaluating specific personal jurisdiction, the court

//

//

//

---

In *Peay v. BellSouth Medical Assistance Plan*, 205 F.3d 1205 (10th Cir. 2000), the defendants precertified the insured for treatment in Utah. *Id.* at 1213. The Tenth Circuit reasoned that because the defendants "rendered benefits in Utah, they knew or should have known that dispute over benfits could arise in Utah." *Id.* As noted above, ASD Plan did not direct its insureds to seek or receive medical services from any particular healthcare provider in the State of Washington, including PSSC. (*See* Hess Decl. ¶ 14.) Thus, this decision is also distinguishable.

Finally, in *Garg v. Winterthur*, 525 F. Supp. 2d 315 (E.D.N.Y. 2007), the court considered "whether it is reasonable to exercise [personal] jurisdiction over a Swiss company having no physical presence in New York, but who actively administers an employee benefits plan on behalf of a corporation that has such a presence." *Id.* at 316. Here, in contrast, ASD Plan does not actively administer employee benefit plans. (*See* Haldane Decl. ¶ 3.) Further, in *Garg*, the plaintiff alleged specific contacts that the defendant had with New York. 525 F. Supp. 2d at 319. PSSC has failed to allege any such contacts between ASD Plan and Washington (*see generally* Compl.), and as noted above, ASD Plan has specifically denied any such contacts (*see* Hess Decl. ¶¶ 4-14).

concludes that specific personal jurisdiction over ASD Plan is lacking.[5] *See King*, 632 F.3d at 580-81. The court has already concluded that general personal jurisdiction over ASD Plan is lacking. *See supra* § III.B. Accordingly, the court may not exercise personal jurisdiction over ASD Plan.

**D.    Jurisdictional Discovery**

PSSC argues that it may be able to discover that ASD Plan is subject to the court's general personal jurisdiction if it is allowed to pursue jurisdictional discovery. (*See* Resp. at 10-11.) Jurisdictional discovery "may be appropriately granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1997). The mere hunch that discovery "might yield jurisdictionally relevant facts" is insufficient, however. *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008). Likewise, a court need not permit jurisdictional discovery "where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants." *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995) (citing *Rich v. KIS Cal., Inc.*, 121 F.R.D. 254, 259 (M.D.N.C. 1988)). A court is justified in denying jurisdictional discovery "when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction." *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977).

---

[5] Because the court concludes that PSSC failed to meet its burden concerning the first two factors, the court need not consider the third factor—prejudice to ASD Plan. *See King*, 632 F.3d at 580-81.

In arguing for jurisdictional discovery, PSSC relies heavily on its discovery of a contract with Vera, a Seattle-based company, to operate a medical clinic in Anchorage, Alaska, for the benefit of Anchorge School District employees and their dependants. (*See* Axelrod Decl. ¶ 2, Ex. 1.)  PSSC argues that ASD Plan "purposefully injected itself into Washington—by soliciting a Seattle-based company to bid for a multiyear, $11,333,500[.00] contract [to operate] a health care clinic" in Anchorage, Alaska.  (Resp. at 9; *see also id*. at 10; Axelrod Decl. ¶ 2, Ex. 1.)  PSSC also argues that "[t]he existence of this Washington-based solicitation and contract . . . in itself may give rise to general [personal] jurisdiction."  (Resp. at 11.)

ASD Plan does not deny the existence of this contract but points out that it is not a party to the Vera contract.  (Reply at 10; *see* Whiting Decl. ¶ 2.)  The contract is between Vera and the Anchorage School District, which is not a party to this suit.  (*Id.*)  Even if the contract were with ASD Plan, however, it would be insufficient, standing alone, to support the exercise of general personal jurisdiction over ASD Plan, and there is nothing in the evidence concerning this contract that indicates further discovery will unveil additional ties to Washington State.  As noted above, the standard for exercising general personal jurisdiction is "exacting."  *Schwarzenneger*, 374 F.3d at 801.  "The standard is met only by 'continuous corporate operations within a state [that are] thought so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely distinct from those activities.'"  *King*, 632 F.3d at 579 (quoting *Int'l Shoe*, 326 U.S. at 318).  Simply conducting business with a resident of a state is not sufficient to establish general personal jurisdiction where the defendant has

not conducted business in the state.  *See Bancroft & Masters, Inc. v. Augusta, Inc*., 223

F.3d 1082, 1086 (9th Cir. 2000) (concluding that general personal jurisdiction was

lacking because even though the defendant had two license agreements with television

networks and a handful of California vendors because "[t]hese agreements constitute

doing business with California, but do not constitute doing business in California[, and]

. . . engaging in commerce with a resident of the forum state is not in and of itself the

kind of activity that approximates physical presence in the state's borders.") (internal

citations omitted).

Further, although Vera is a Seattle-based company, everything else about the

contract is connected to Alaska.  The Anchorage School District evaluated all of the

proposals concerning the contract it ultimately awarded to Vera in Alaska; it made the

decision to award the contract to Vera in Alaska; the health clinic, which is the subject of

the contract, is located in Anchorage; and the contract contains a choice of law and

choice of forum provision specifying that any disputes will be resolved in Alaska

applying Alaskan law.  (Whiting Decl. ¶ 2.)  There is nothing in the evidence produced

by either party to suggest that the contract between Vera and the Anchorage School

District would support a Washington court's exercise of general personal jurisdiction

over ASD Plan or that further discovery concerning the contract would reveal additional

ties to Washington State.  In addition, the Vera contract is unrelated to PSSC's claim in

this lawsuit, and thus, would not enter into an evaluation of specific personal jurisdiction.

*See King*, 632 F.3d at 580-81 (stating that the second factor to consider in analyzing

specific personal jurisdiction is that "the claim must be one which arises out of or relates to the defendant's forum-related activities").

"[A plaintiff's] request for jurisdictional discovery is [to be denied] where it appears to be based on speculation." *J.D. Equip., LLC v. Acme Lift Co., LLC*, No. 12-CV-01720-RAJ, 2013 WL 1499310, at *3 n.7 (W.D. Wash. Apr. 10, 2013). PSSC's assertion that ASD Plan may be subject to general personal jurisdiction on the basis of the Vera contract, to which ASD Plan is not even a party, is too thin a reed upon which to hang PSSC's request for jurisdictional discovery. PSSC has offered the court little more than mere speculation. This court will not grant jurisdictional discovery on the off chance that PSSC will discover further contacts between either ASD Plan or the Anchorage School District and Washington State. *See Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (denying jurisdictional discovery where plaintiffs merely alleged a belief that such discovery would enable them to demonstrate sufficient forum contacts). Indeed, PSSC has failed to demonstrate "any reason to suppose that jurisdictional discovery would reveal facts that would demonstrate that [ASD Plan] is subject to general personal jurisdiction in [Washington]." *See AM Tr. v. UBS AG*, 681 F. App'x 587, 589 (9th Cir. 2017). "It certainly has not made 'the clearest showing that denial of [jurisdictional] discovery [would] result[] in actual and substantial prejudice.'" *Id.* (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008)). Because PSSC is able to show only one contract that is unrelated to the underlying claims of this suit and is with an entity that—although related to ASD Plan—is not a party to

this suit, the court declines to grant PSSC the opportunity to conduct jurisdictional discovery.

**E.    Attorney's Fees under 28 U.S.C. § 1927**

ASD Plan asks the court to grant it attorney's fees under 28 U.S.C. § 1927.  (Mot. at 15.)  ASD Plan does not seek sanctions under any other provision and cites no case authority in support of its request.  (*See id.*)  Because 28 U.S.C. § 1927 authorizes sanctions for the multiplication of proceedings, it applies only to unnecessary filings and tactics that occur after the complaint is filed; the statute does not apply to the initial pleading.  *Ortego v. Lummi Island Scenic Estates Cmty. Club, Inc*., No. C14-1840RSL, 2017 WL 1210065, at *1 (W.D. Wash. Apr. 3, 2017) (citing *In re Keegan Mgmt. Co. Sec. Litig*., 78 F.3d 431, 435 (9th Cir. 1996).  Accordingly, the court denies ASD Plan's request for fees.

## IV.  CONCLUSION

Based on the foregoing analysis, the court GRANTS ASD Plan's Rule 12(b)(2) motion to dismiss PSSC's claims against it for lack of personal jurisdiction (Dkt. # 27). The court also DENIES PSSC's request to conduct jurisdictional discovery and ASD Plan's request for fees.

Dated this 6th day of March, 2018.

JAMES L. ROBART
United States District Judge