UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PUGET SOUND SURGICAL CENTER, PS,<br><br>                          Plaintiff,<br>      v.<br><br>AETNA LIFE INSURANCE COMPANY, et al.,<br><br>                         Defendants. | CASE NO. C17-1190JLR<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND |

## I. INTRODUCTION

Before the court is Defendant Sound Health & Wellness Trust's ("Sound Health") Federal Rule of Civil Procedure 12(b)(6) motion to dismiss Plaintiff Puget Sound Surgical Center, PS's ("PSSC") complaint with respect to Sound Health. (MTD (Dkt. # 70); *see also* Compl. (Dkt. # 1).) PSSC opposes the motion. (Resp. (Dkt. # 73).) The court has considered the motion, the parties' submissions concerning the motion, other

relevant portions of the record, and the applicable law. Being fully advised,[1] the court GRANTS in part and DENIES in part the motion and DISMISSES PSSC's complaint with respect to Sound Health but with leave to amend as set forth below.

## II. BACKGROUND

On August 8, 2017, PSSC filed an action under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and its governing regulations, against Defendants Aetna Life Insurance Company and Aetna, Inc. (collectively, "Aetna") and other Defendants, including Sound Health (collectively, "Plan Defendants"). (*See generally* Compl.) PSSC claims that Aetna, which allegedly provided third-party administrative services to Plan Defendants, improperly denied coverage for certain medical services PSSC provided to patients who were insured by Plan Defendants. (*Id.* ¶¶ 4, 23-65.) PSSC alleges that an investigator for Aetna's Special Investigations Unit ("SIU") improperly "pended" PSSC's claims by placing a flag on PSSC's account, so that Aetna automatically did not pay PSSC's claims. (*Id.* ¶¶ 2-4, 23-65.) Finally, PSSC alleges that various Plan Defendants are liable to PSSC for the actions of Aetna's SIU investigator. (*See id.* ¶¶ 86-124.) PSSC did not make any such specific allegations against Sound Health. (*See id.*)

The complaint contains few allegations that specifically reference Sound Health. (*See generally id.*) In the complaint's introductory paragraph, PSSC identifies Sound Health as a defendant in the action. (*Id.* at 1.) PSSC alleges that Sound Health "is a

---

[1] No party asks for oral argument (*see* MTD at 1; Resp. at 1), and the court finds this motion appropriate for disposition without it, *see* Local Rules W.D. Wash. LCR 7(b)(4).

Group Benefits Program under which certain of PSSC's patients receive coverage." (*Id.* ¶ 19.) PSSC also alleges that Sound Health is located in Seattle, Washington. (*Id.*) In the 59-paragraph section of the complaint, entitled "FACTS," the only reference to Sound Health states:

> For a number of service dates and patients RA, SA, HD, KM, CR, JS, and AW, Aetna's lack of payments left an unpaid balance of $186,018.49. These patients are beneficiaries of [Sound Health].

(*Id.* ¶ 76.) In conjunction with its response to Sound Health's motion to dismiss, PSSC provides a declaration indicating that the total amount of Sound Health's patients' unpaid claims is actually $280,102.84, rather than $186,018.49; and that on March 27, 2018, PSSC provided Sound Health with a "comprehensive spreadsheet" detailing all of these claims. (*See* Resp. at 6 (citing Axelrod Decl. (Dkt # 74) ¶ 3, Ex. 1).)

In the 46-paragraph, 12-count, section of the complaint entitled "ALLEGATIONS," PSSC brings claims for unpaid benefits under ERISA against Aetna, and Defendants Bank of America, Amtrak Health Plan, Bechtel Jacobs Company LLC, Nordstrom, Inc. Classic Plan, Starbucks Health Care Plan, Costco Wholesale Health Plan, Lockheed Martin Corporation Total Health Plan, Adobe Systems, Inc. Group Welfare Plan, and WESTCO Health Plan ("Westco").[2] (Compl. ¶¶ 83-111.) In this same section of the complaint, PSSC also brings claims for implied-in-law contract and/or unjust enrichment against Aetna and Defendants Anchorage School District

//

---

[2] On September 27, 2018, PSSC voluntarily dismissed Westco without prejudice. (Not. (Dkt. # 81).)

Active Employee Open Choice PPO Medical Plan ("Anchorage")[3] and State of Alaska AlaskaCare Employee Health Plan ("Alaska").[4] (*Id.* ¶¶ 112-24.) Finally, PSSC brings a claim for fraudulent misrepresentation against Aetna. (*Id.* ¶¶ 125-29.) PSSC, however, fails to reference Sound Health in this section of its complaint at all. (*See generally id.* ¶¶ 83-129.)

Along with its motion to dismiss, Sound Health submits evidence supporting its contention that PSSC's factual allegations concerning Aetna's SIU investigator do not apply to Sound Health because Sound Health contracts with Zenith American Solutions ("Zenith") for its third-party administrative services. (*See* MTD at 4 (citing Brough Decl. (Dkt. # 71) ¶ 2.)) Although Aetna provides some services to Sound Health (*see* Brough Decl. ¶¶ 3-5), Sound Health contends that it is Zenith, not Aetna, which adjudicates all hospital and provider claims, considers claim edits sent by Aetna, and then applies Sound Health's plan limitations and exclusion, deductibles, coinsurance, and coordination of benefits, to arrive at the amount to pay the provider, if any, and the amount the patient owes (*see* MTD at 4 (citing Brough Decl. ¶ 4)).

In paragraph 82 of the complaint, PSSC alleges that it exhausted its administrative remedies by appealing the denials or under-reimbursements of each of the claims described in the complaint and receiving a denial of the appeals "or Aetna's

//

---

[3] On March 6, 2018, the court dismissed Anchorage from this suit for lack of personal jurisdiction. (*See* 3/6/18 Order (Dkt. # 61).)

[4] On September 27, 2018, PSSC voluntarily dismissed Alaska without prejudice. (*See* Not.)

failure to respond." (Compl. ¶ 82.) PSSC also alleges that it sought to exhaust its remedies by appealing to Aetna's SIU unit. (*Id.*) PSSC alternatively alleges that exhaustion is futile because Aetna's appeals staff "do not have permission to overrule the determination to deny, pend, and flag claims made by the SIU department." (*Id.*)

Sound Health contends that, like PSSC's other allegations, PSSC's exhaustion allegations do not apply to Sound Health. (MTD at 4-5.) Sound Health submits evidence supporting its contention that providers may appeal a benefit determination made by Zenith on a patient's behalf only when the patient has provided a signed authorization giving the provider the right to appeal on the patient's behalf. (*Id.* at 5 (citing Brough Decl. ¶ 5, Ex. A).) In addition, Sound Health contends that Zenith, not Aetna, makes the initial decision on appeal, after which a participant has a second right to appeal. (*Id.* (citing Brough Decl. ¶ 5, Ex. B).)

On July 5, 2018, Sound Health moved to dismiss PSSC's complaint against it for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (*Id.* at 6-8.) Sound Health argues both that PSSC failed to plead any claim against it and also failed to plead facts sufficient to show an exhaustion of administrative remedies that pertain to Sound Health. (*Id.*) Finally, Sound Health argues, based on the evidence it submits, that the court should not allow PSSC to amend its complaint because PSSC's general factual allegations, which pertain to an Aetna SIU investigator's alleged improper claims denials, do not apply to Sound Health. (*Id.* at 8.) PSSC opposes the motion. (*See generally* Resp.) The court now considers Sound Health's motion.

//

## III. ANALYSIS

**A.  Motion to Dismiss Standard**

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court construes the complaint in the light most favorable to the non-moving party. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). The court must accept all well-pleaded allegations of material fact as true and draw all reasonable inferences in favor of the plaintiff. *See Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). The court, however, need not accept as true a legal conclusion presented as a factual allegation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. Dismissal under Rule 12(b)(6) can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

**B.  Materials the Court Considers**

Sound Health and PSSC attach evidence outside the pleadings to the motion to dismiss and the response, respectively. (*See e.g.*, Bough Decl.; Axelrod Decl.) "As a

general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotation marks and citation omitted). If a district court considers evidence outside the pleadings when ruling on a Rule 12(b)(6) motion to dismiss, the motion generally will be treated as one for summary judgment. Fed. R. Civ. P. 12(d). However, the court has discretion either to consider or reject such evidence. *Swedberg v. Marotzke*, 339 F.3d 1139, 1143-46 (9th Cir. 2003) (where a district court does not rely on the materials submitted outside the pleadings, a motion to dismiss need not be converted into a motion for summary judgment); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 582 (9th Cir. 1983) ("[A] motion to dismiss is not automatically converted into a motion for summary judgment whenever matters outside the pleading happen to be filed with the court"); Charles Allen Wright, *et al.*, 5C Fed. Prac. & Proc. § 1366 (3d ed. 2010) ("[F]ederal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it").

If a court converts a motion to dismiss into a motion for summary judgment by considering evidence outside the pleadings, the court must give the parties notice and a reasonable opportunity to supplement the record. *Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1408 (9th Cir. 1995). There is a narrow exception allowing the court to consider a limited set of documents without converting a motion to dismiss into one for summary judgment, including documents attached to the complaint, matters of judicial notice, or documents incorporated by reference in the complaint upon which the complaint

"necessarily relies." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003); *Lee*, 250 F.3d at 688. Here, neither Sound Health's evidence nor PSSC's evidence fall inside this narrow exception. (*See* Bough Decl.; Axelrod Decl.) The dispositive motions deadline is not until December 18, 2018. (*See* Sched. Order (Dkt # 57) at 1.) Thus, Sound Health has sufficient time to properly file a motion for summary judgment if it deems such a motion appropriate. Accordingly, the court declines to consider either party's evidence in ruling on Sound Health's motion to dismiss and, therefore, does not convert Sound Health's Rule 12(b)(6) motion into one for summary judgment.

**C.     PSSC's Factual Allegations**

Sound Health moves to dismiss PSSC's complaint against it on grounds that PSSC's factual allegations against it are too sparse to place it on notice of the basis for Sound Health's claim. (MTD at 6-7.) PSSC responds that under modern notice pleading requirements, a plaintiff need not set forth causes of action, statutes, or legal theories, but only claims for relief. (Resp. at 5.) Accordingly, PSSC argues that its failure to specifically identify the legal basis for its claim against Sound Health in the section of its complaint entitled "<u>ALLEGATIONS</u>" does not merit dismissal. (*See id.* at 5-10.)

The court generally agrees that a plaintiff need not allege a specific legal theory assuming the plaintiff has pleaded sufficient facts to place the defendant on notice of what the plaintiff's claim is and the grounds upon which it rests. *See Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008). However, in this instance, PSSC's sole factual allegation that pertains specifically to Sound Health, even when considered with the remainder of the complaint, does not provide sufficient facts to place Sound Health on

notice of PSSC's claim and the ground on which it rests. Indeed, PSSC's single allegation against Sound Health states only that "Aetna's lack of payments left an unpaid balance" for a number of PSSC's patients who are beneficiaries of Sound Health. (Compl. ¶ 76.) The paragraph does not allege that Sound Health—as opposed to Aetna or the patients themselves—has any obligation for the unpaid balance. (*See id.*) PSSC alleges that other Plan Defendants are liable to PSSC for Aetna's actions through its SIU investigator. (*See id.* ¶¶ 86-124.) PSSC does not make any such allegations against Sound Health. (*See generally id.*)

Indeed, PSSC admits that its failure to plead any obligation on the part Sound Health for the unpaid balance noted in paragraph 76 of its complaint was "an oversight by counsel." (Resp. at 2.) Despite this admission, PSSC does not seek to amend its complaint, but rather stands on the adequacy of its allegations. (*See generally id.*) The trouble with PSSC's position is that the section of its complaint entitled "ALLEGATIONS" contained not just a recitation of legal causes of action, but additional factual allegations as well. For example, in paragraph 82 of the complaint, PSSC alleges that "[a]s a plan administrator and sponsor of the Bank of America plan, Bank of America must cover and pay benefits to Bank of America plan members in accordance with to the terms of the plan . . . ." (Compl. ¶ 86.) In addition, PSSC alleges that "Bank of America violated its legal obligations . . . when, through its third-party administrator, Aetna, it denied and under-reimbursed the surgical and other procedures and services PSSC billed to Aetna. (*Id.*) These allegations provide the factual connection necessary between the actions of Aetna's SIU investigator and Bank of America. PSSC alleged this

factual connection for each such defendant except Sound Health. (*See id.* ¶¶ 88-124.) Thus, the problem is not that PSSC failed to plead a cause of action or a legal count against Sound Health; the problem is that PSSC failed to allege a factual connection between the unpaid balance alleged in paragraph 76 and any obligation on the part of Sound Health to pay it.

The only case involving an ERISA claim cited by PSSC favors Sound Health. (*See* Resp. at 7; *see also* Reply (Dkt # 80) at 5-6.) In *Cler v. Illinois Education Association*, a terminated teacher sued two labor unions, including a state and a national education association, and two alleged legal services plans. 423 F.3d 726, 727 (7th Cir. 2005). She alleged wrongful denial of her request for legal services, asserting both an ERISA claim and claims under state common law. *Id.* The district court dismissed the ERISA claim on the defendants' Rule 12(b)(6) motion. *Id.* The district court construed the ERISA claim as leveled against only one of the alleged legal services plans, and then held that the plan in question was not a "welfare benefit plan" for purposes of ERISA. *Id.*

In overturning the district court, the Seventh Circuit noted that the district court "read the complaint too narrowly in determining that [one of the legal services plans] was the only defendant alleged to have violated ERISA." *Id.* at 729-30. In particular, the count alleging an ERISA violation referred throughout to "defendant" and "defendants"—obviously meaning more than just one defendant. *Id.* at 728. Further, in another portion of the complaint, the plaintiff alleged that "the defendants failed to provide benefits to her which she was entitled [sic] under the plan in violation of the

provisions of ERISA." *Id.* The Seventh Circuit determined that these allegations against plural defendants provided sufficient notice that the plaintiff was alleging an ERISA violation against both legal services plans. *Id.* at 729-30.

There are no similar allegations against plural defendants in the present complaint. Specifically, PSSC defines all of the defendants in this action, with the exception of Aetna, as "Plan Defendants." (Compl. at 1.) PSSC alleges that "[c]ertain of the Plan Defendants sponsor the Group Benefits Programs under which . . . PSSC patients . . . receive health care coverage." (*Id.*) This allegation is consistent with PSSC's specific allegation that Sound Health "is a Group Benefits Program under which certain of PSSC's patients receive coverage." (*Id.* ¶ 19.) PSSC also alleges that Aetna administers Plan Defendants' plans, "including by making coverage and benefits decisions and deciding appeals." (*Id.* ¶ 10.) Finally, PSSC alleges that "[a]s the claims administrator for the Plan Defendants, and as a plan fiduciary because it retains discretion in interpreting the terms of the plan and determines appeals, Aetna must cover and pay benefits to [Plan Defendants' members] and fully insured members in accordance . . . with ERISA." (*Id.* ¶ 83.) Although these allegations may inform the reader as to PSSC's claim against Aetna, even when combined with the specific allegation that "Aetna's lack of payments left an unpaid balance of $186,018.49" for "patients [who] are beneficiaries of [Sound Health]" (*id.* ¶ 76), the allegations in total are insufficient to place Sound Health on notice as to what PSSC's claim is against Sound Health and the grounds upon which the claim rests, *see Alvarez*, 518 F.3d at 1157.

Sound Health should not have to surmise what PSSC's claim against it is based on PSSC's allegations against others. Sound Health is entitled under Federal Rules of Civil Procedure 8 to a "short and plain statement" of PSSC's claim against it "showing that [PSSC] is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). To date, PSSC has failed to articulate that claim in a manner that conforms to both Rule 8 and Rule 12(b)(6). Accordingly, the court GRANTS Sound Health's motion on this basis and DISMISSES PSSC's complaint against Sound Health.

**D.     Exhaustion of Administrative Remedies**

Sound Health also moves to dismiss PSSC's complaint on grounds that PSSC failed to adequately allege exhaustion of its administrative remedies. (MTD at 7-8.) "As a general rule, an ERISA claimant must exhaust available administrative remedies before bringing a claim in federal court." *Barboza v. Cal. Ass'n of Prof'l Firefighters*, 651 F.3d 1073, 1076 (9th Cir. 2011).

Prior to *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (en banc), the rule in the Ninth Circuit was that a motion to dismiss an ERISA denial-of-benefits claim for failure to exhaust administrative remedies should be treated as an unenumerated motion to dismiss. *See Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083, 1088 (9th Cir. 2012). In *Albino*, however, the Ninth Circuit, sitting *en banc*, recognized exhaustion of administrative remedies as an affirmative defense that defendants "must plead and prove." 747 F.3d. at 1166. The Ninth Circuit explained that the proper procedure for exhaustion questions is a motion for summary judgment, "followed, if necessary, by a decision by the court on disputed questions of material fact relevant to

exhaustion." *Id*. at 1171. However, the defense may be brought in a Rule 12(b) motion to dismiss "in the rare event that a failure to exhaust is clear on the face of the complaint." *Id*. at 1166.

Although *Albino* arose in a Prison Litigation Reform Act ("PRLA") case, the court emphasized that its holding extended to the use of unenumerated motions to dismiss in other contexts as well. *Id*. at 1171 (identifying cases decided under the Individuals with Disabilities Education Act, the Labor Management Relations Act, and proceedings under the Food and Drug Administration as examples). Here, the court concludes that *Albino* applies to ERISA cases. *See Norris v. Mazzola*, No. 15-CV-04962-JSC, 2016 WL 1588345, at *6 (N.D. Cal. Apr. 20, 2016) ("While [*Albino*] did not explicitly overrule the prior rule treating a motion to dismiss an ERISA claim for failure to exhaust administrative remedies as an unenumerated motion to dismiss, it implicitly did so.") ERISA exhaustion, like PLRA exhaustion, is traditionally pleaded as an affirmative defense. *Id.* (citing cases). In addition, other circuit courts have followed the procedure laid out by the *Albino* court for ERISA exhaustion questions. *Id.* (citing *Am. Chiropractic Ass'n v. Am. Specialty Health Inc.*, 625 F. App'x 169, 173 n.5 (3d Cir. 2015) ("Because the exhaustion defense often requires consideration of materials outside the pleadings and is thus typically resolved on summary judgment, it is not generally the basis for dismissal under Rule 12(b)(6).") (internal citation and quotation marks omitted); *Crowell v. Shell Oil Co*., 541 F.3d 295, 309 (5th Cir. 2008) (concluding that ERISA exhaustion is not "a jurisdiction bar," but "a defense")).

The question here then is whether a failure to exhaust is evident from the face of PSSC's complaint. *See Norris*, 2016 WL 158345, at *6. In other words, has PSSC pleaded itself out of its ERISA claim by alleging facts consistent with a failure to exhaust its administrative remedies related to Sound Health? *See id.*; *see also Russell v. CVS Caremark Corp.*, No. CV-16-00284-PHX-PGR, 2017 WL 1090677, at *4 (D. Ariz. Mar. 23, 2017). It has not. (*See* Compl. ¶ 82.) Indeed, PSSC need not plead any facts to negate an affirmative defense. *See Russell*, 2017 WL 1090677, at *4 ("Having determined that exhaustion of administrative remedies is an affirmative defense [in the context of an ERISA claim], the Court rejects [the defendant's] underlying contention that the plaintiff has to plead exhaustion in her [complaint].") Accordingly, the court DENIES this aspect of Sound Health's motion to dismiss.[5]

**E.     Leave to Amend**

The Ninth Circuit has "held that in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). At this point, the court cannot conclude that PSSC's complaint could not be cured by proper amendment. Accordingly, within the confines of Federal Rule of Civil Procedure 11, the court ORDERS PSSC to file an amended complaint within 14 days of the filing date of this order that cures the deficiencies cited herein. If

---

[5] Sound Health is free, however, to raise this issue again, if appropriate, in a properly filed motion for summary judgment.

PSSC fails to timely file such amended complaint or fails to file an amended complaint that cures the deficiencies described herein, the court will dismiss PSSC's claims against Sound Health with prejudice and without further leave to amend.

## IV.  CONCLUSION

Based on the foregoing analysis, the court GRANTS in part and DENIES in part Sound Health's Federal Rule of Civil Procedure 12(b)(6) motion to dismiss PSSC's complaint against it (Dkt. # 70).  The court GRANTS Sound Health's motion to dismiss to the extent that PSSC fails to state a claim against Sound Health as described herein. The court, however, DENIES Sound Health's motion to dismiss based on PSSC's failure to adequately allege exhaustion of its administrative remedies.  Finally, the court DISMISSES PSSC's complaint against Sound Health without prejudice and with leave to file an amended complaint within 14 days of the filing date of the order as described herein.

Dated this 5th day of October, 2018.

JAMES L. ROBART
United States District Judge